UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM PAUL BENNETT,

                       Plaintiff,

v.

NEW YORK STATE THRUWAY
AUTH.; JOANNE M. MAHONEY,
NYSTA Chairman, Board of Directors;
MAYOR MATTHEW DRISCOLL,
NYSTA Exec. Dir.; JAMES
KONSTALID, NYSTA Dir. of
Maint. and Operations; JOHN BARR,                      6:22-CV-0337
NYSTA Dir. of Admin. Servs.;                                    (GLS/ML)
FRANK MULTARI, NYSTA Dir. of
Pers.; MARY BOEHM, NYSTA Acting
Dir. for the Dep't of Audit and Mgmt.
Servs.; CARLOS MILLAN, NYSTA
Dir. Bureau of Labor Relations and Emp.
Safety; PATRICK HOEHN, NYSTA Acting
Dir. Syracuse Div.; KEVIN POST, NYSTA
MS-3, Facilities; ROBERT DRESSING,
NYSTA MS-3, Highway Maint.; BARRY
OAKSFORD, MS-2, Facilities; MICHAEL
BLAIS, MS-2, Maint.; TODD SUMMERSON;
and DAVID NAPLES, NYSTA EEOC
Specialist 1,

                       Defendants.
_____

APPEARANCES:                                               OF COUNSEL:

WILLIAM PAUL BENNETT
  Plaintiff, *Pro Se*
1610 North George Street
Rome, New York 13440

MIROSLAV LOVRIC, United States Magistrate Judge

**DECISION and ORDER**

**I.     INTRODUCTION**

Plaintiff William Paul Bennett ("Plaintiff") commenced this civil rights action *pro se* in April 2022, asserting claims related to his employment with the New York State Thruway Authority. (Dkt. No. 5.) Plaintiff did not pay the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.) In addition, Plaintiff filed a motion for appointment of counsel. (Dkt. No. 4.)

**II.    PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS***

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to grant IFP status if it determines that the plaintiff is unable to pay the required fee. 28 U.S.C. § 1915(a)(1).[1] Pursuant to 28 U.S.C. § 1915, where a plaintiff seeks leave to proceed IFP, the court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying the required filing fee. 28 U.S.C. § 1915(a)(1).

The decision of whether to grant an application to proceed IFP rests within the sound discretion of the court. *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983). The Court must be satisfied "that the person is unable to pay such fees or give security therefor" prior to granting IFP status. 28 U.S.C. § 1915(a)(1). To make this threshold showing, a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that

---

[1]  The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

such payment would render plaintiff destitute." *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (Fed. Cl. 2007) (citing *Adkins v. E.l. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)); *see also Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) ("Section 1915[a] does not require a litigant to demonstrate absolute destitution[.]"); *accord, Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). As the Second Circuit has noted, "no party must be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339).

In support of an IFP application, 28 U.S.C. § 1915 requires that a plaintiff submit an affidavit reflecting his assets. 28 U.S.C. § 1915(a)(1).

Here, Plaintiff's IFP application states that his gross pay or wages are $2,259.20 bi-weekly and his take-home pay or wages are $1,563.39 bi-weekly, which equates to approximately $58,739.20 in annual income before taxes and $40,648.14 in annual income after taxes. (Dkt. No. 2 at ¶ 2.) The United States Department of Health and Human Services publishes yearly Poverty Guidelines. Those guidelines reflect that, for 2022, the poverty threshold for a household of one[2] is $13,590, a household of two is $18,310, and a household of three is $23,030. *See* United States Dep't of Health & Human Servs., https://aspe.hhs.gov/poverty-guidelines (last visited June 9, 2022).[3]

In addition, Plaintiff's application reflects ownership in real property in Blossvale, New York. (Dkt. No. 2 at ¶ 5.) Although Plaintiff alleges that the property is uninhabitable, he

---

[2]   The IFP application indicates that Plaintiff lives with his wife (Marylouise Bennett) and his sister-in-law (Deborah Lysejko), but does not state whether those individuals are dependent on him for support. (Dkt. No. 2 at ¶ 7.)

[3]   The Poverty Guidelines do not specify whether they measure income before or after taxes. This distinction is irrelevant in this case.

estimates that the current market value is $80,000, that he and his co-owners have access to a loan in the amount of $60,000 to "bring property taxes current and bring the property to saleable condition," and that the expected sale value of the property is between $180,000 and $200,000. (*Id*. at ¶¶ 5, 8.)

Moreover, "Plaintiff's application does not disclose any extraordinary or unusual expenses, debts or financial obligations, other than ordinary cost-of-living expenses, such as property taxes, utilities, insurance, and food." *David v. U.S. Envtl. Prot. Agency*, 19-CV-0064, 2019 WL 1004706, at *2 (N.D.N.Y. Jan. 29, 2019) (Peebles, M.J.). Although Plaintiff and his wife have an unsecured debt in the amount of approximately $35,000.00, his monthly expenses appear to be less than his monthly income and he owns other assets including two vehicles and a utility trailer. (Dkt. No. 2 at ¶¶ 5-8.)

In this instance, I find that Plaintiff possesses sufficient funds to pay the $402.00 filing fee to commence an action without "foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. 339). Accordingly, I deny Plaintiff's motion to proceed in this case IFP.

If Plaintiff wishes to proceed with this action, he must comply with the filing fee requirements **within thirty (30) days** of the filing date of this Decision and Order. Plaintiff is advised that his failure to timely comply with this Decision and Order will result in the issuance of a report and recommendation to the assigned district judge that the action be dismissed.

### III.  PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has also submitted a request for appointment of counsel. (Dkt. No. 4.)

As an initial matter, "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) (citations omitted). Courts cannot utilize a bright-line test in determining

whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion. As a threshold matter, the court should ascertain whether the indigent's claims seem likely to be of substance. A motion for appointment of counsel may be properly denied if the court concludes that the plaintiff's "chances of success are highly dubious." *Leftridge*, 640 F.3d at 69. If the court finds that the claims have substance, the court should then consider:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp.*, 28 F.3d at 1341 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

"At this stage of the litigation, where the Complaint has not yet been served on . . . Defendants and they have not had the opportunity to respond to Plaintiff's allegations, Plaintiff's Motion for Appointment of Counsel is premature." *Georges v. Rathner*, 17-CV-1245, 2017 WL 7244525, at *4 (N.D.N.Y. Dec. 11, 2017) (Stewart, M.J.). Accordingly, Plaintiff's Motion to Appoint Counsel is **denied** with leave to renew should this action proceed.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **DENIED**; and it is further

**ORDERED** that should Plaintiff wish to proceed with this action, he must pay the $402.00 filing fee **within thirty (30) days** from the date of the filing of this Decision and Order.

Failure to comply with this directive will result in the issuance of a report and recommendation to the assigned district judge that the action be dismissed; and it is further

ORDERED that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED without prejudice**; and it is further

ORDERED that the Clerk shall serve this Decision and Order on Plaintiff by mail, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Dated: June 10, 2022
Binghamton, New York

*Miroslav Lovric*
Miroslav Lovric
U.S. Magistrate Judge